Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:    (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Paula Cheney-Aguirre*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Paula Cheney-Aguirre,<br><br>           Plaintiff,<br><br>      v.<br><br>Hartford Fire Insurance Company, Hartford Comprehensive Employee Benefits Service, Co., Hartford Life and Accident Insurance Company, Hartford Fire Insurance Company Income Protection Plan,<br><br>           Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Paula Cheney-Aguirre (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

***Jurisdiction***

1.  Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant The Hartford Life and Accident Insurance Company (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group long term disability insurance policy, which was fully insured and administered by the Hartford Fire Insurance Company (hereinafter referred to as "Hartford Fire"). The specific Hartford long term policy is known as group policy number GLT070312. Upon information and belief, the Company's purpose in subscribing to the Hartford Fire policy was to provide disability insurance for its employees. Upon information and belief, the Hartford Fire policy may have been included in and part of the Hartford Fire Insurance Company Income Protection Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to Hartford Fire and/or its member company the Hartford Comprehensive Employee Benefits Service, Co (hereinafter referred to as the "Administrator"). Hartford Fire and the Administrator are hereinafter collectively referred to as "Hartford." Plaintiff believes that as it relates to her claim, Hartford functioned in a fiduciary capacity as the Plan and/or Claim Administrators.

5. Upon information and belief, Plaintiff believes Hartford operated under a conflict of interest in evaluating her claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of

benefits; *to wit,* Hartford's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits. [1]

6. The Company, Plan and Hartford conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about August 12, 2010 due to serious medical conditions and was unable to work in her designated occupation as a Claim Representative. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff applied for short term disability benefits which were approved and have been exhausted.

---

[1] "A plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

11. Plaintiff then applied for long term disability benefits under the relevant Hartford policy. The relevant long term disability policy provides the following definition of disability:

> Disability or Disabled means that you are prevented by:
>
> (1) accidental bodily injury;
>
> (2) sickness;
>
> (3) Mental Illness;
>
> (4) Substance Abuse; or
>
> (5) Pregnancy,
>
> from performing one or more of the Essential Duties of your Occupation during the first 24 months of any one Period of Disability.
>
> After that you must be so prevented from performing one or more of the Essential Duties of Any Occupation.

12. In support of her claim for long term disability benefits, Plaintiff submitted to Hartford medical records from her treating physicians which was sufficient for any un-conflicted fiduciary to conclude she met any definition of disability as defined in the relevant policy.

13. Hartford notified Plaintiff in a letter dated February 7, 2011 that it was approving her claim for long term disability benefits as of February 12, 2011. Thereafter, Hartford notified Plaintiff by letter dated August 17, 2011 that she no longer met the relevant definition of disability in the Hartford policy as of August 16, 2011.

14. As part of its evaluation of Plaintiff's claim for long term disability benefits, Hartford obtained a medical "records only" peer review by Mark Albanese, M.D., who is a consulting physician for the University Disability Consortium (hereinafter "UDC"). As the attached interrogatory answers confirm (*See* Exhibit "A" to this Complaint), Hartford has a long business relationship with UDC providing the type of medical records reviews for Hartford which occurred in her case and Plaintiff believes UDC derives an important

amount of annual revenue from this relationship which raises serious questions regarding bias and UDC's and/or its physicians' objectivity in rendering opinions.

15. Upon information and belief, Plaintiff believes Dr. Albanese is a long time consultant for the disability insurance industry. Plaintiff further believes Dr. Albanese has an incentive to protect his own consulting relationships with the disability insurance industry, UDC and/or Hartford by providing medical record only peer reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions favorable to insurance companies and which supported the denial of Plaintiff's claim.

16. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the August 17, 2011 termination of her long term disability benefits in a letter dated September 7, 2011. In support of her appeal, Plaintiff submitted additional medical evidence to Hartford which proved she met any definition of disability as set forth in the policy.

17. As part of its evaluation of Plaintiff's appeal, Hartford again obtained a medical "record only" peer review of Plaintiff's claim from Kenneth J. Marks, D.O., who is a consulting physician for MCMC. Upon information and belief, Plaintiff believes Dr. Marks is a long time consultant for the disability insurance industry. Plaintiff further believes Dr. Marks also has an incentive to protect his own consulting relationships with the disability insurance industry and Hartford by providing medical record only reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

18. On December 1, 2011 Plaintiff retained undersigned Counsel to represent her in her claim for disability benefits with Hartford. In a letter dated December 1, 2011

Counsel informed Hartford he had been retained by Plaintiff and requested that Hartford revoke Plaintiff's September 7, 2011 appeal of her denial.

19. Hartford informed Plaintiff in a letter dated November 29, 2011 it was upholding its prior determination to terminate benefits beyond August 15, 2011. Plaintiff did not received Hartford's letter until December 12, 2011. Plaintiff has reason to believe Defendant back dated its November 29, 2011 denial letter due to the fact that the envelope containing the Hartford denial is post marked December 1, 2011 – the same date Counsel informed Defendant he had been retained to represent Plaintiff and requested Defendant revoke Plaintiff's prior appeal in order to allow time to perfect her claim.

20. In its November 29, 2011 denial letter, Hartford notified Plaintiff she exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

21. Plaintiff believes Hartford did not act as a fiduciary and may have precluded Plaintiff from perfecting her disability claim on appeal.

22. Hartford failed to adequately investigate Plaintiff's case and failed to engage Plaintiff and/or her treating physician in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Hartford's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

23. Upon information and belief, Hartford denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, disregarding Plaintiff's self-reported symptoms, back dating its final denial of Plaintiff's claim, failing to consider all the diagnoses and/or

limitations set forth in her medical evidence as well as the combination of those diagnoses and impairments, failing to obtain an Independent Medical Examination when the policy allowed for one and her disability claim was based on diagnoses which are not easily understood or appreciated simply by reviewing records, failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claim, failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation and precluding Plaintiff from perfecting her claim when she tried to withdraw her appeal.

24. In evaluating Plaintiff's claim on appeal, Hartford had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do.[2]

25. Plaintiff believes the reason Hartford provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Hartford undertook as decision maker and payor of benefits which created an inherent conflict of interest. Plaintiff believes Hartford's conflict of interest is evident in the fact that it approved her short term disability claim and paid the maximum short term disability benefits, but then when confronted with potential of paying client for an extended period of time in her long term disability claim; Hartford denied her long term disability claim even though Plaintiff's medical diagnoses and limitations had not changed and the

---

[2] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

1  short and long term disability policies contained essentially the same definition of
2  disability. Due to its conflict of interest, when Hartford denied Plaintiff's long term
3  disability claim it saved a significant sum of money.

4  26. Plaintiff is entitled to discovery regarding the aforementioned conflicts of
5  interest of Hartford and any individual who reviewed her claim and the Court may properly
6  weigh and consider evidence regarding the nature, extent and effect of *any* conflict of
7  interest which may have impacted or influenced Hartford's decision to deny her claim.

8  27. With regard to whether Plaintiff meets the definition of disability set forth in
9  the policy, the Court should review the evidence in Plaintiff's claim *de novo,* because even
10 if the Court concludes the Plan confers discretion, the unlawful violations of ERISA
11 committed by the Plan and its administrators as referenced herein are so flagrant they
12 justify *de novo* review.

13 28. As a direct result of Hartford's decision to deny Plaintiff's disability claim she
14 has been injured and suffered damages in the form of lost disability benefits, in addition to
15 other potential employee benefits she may have been entitled to receive through or from the
16 Plan and/or Company as a result of being found disabled.

17 29. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits,
18 prejudgment interest, reasonable attorney's fees and costs from Defendants.

19 30. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum
20 pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for
21 losses she incurred as a result of Defendants' unjustified denial of payment of benefits.

22 WHEREFORE, Plaintiff prays for judgment as follows:

23 A. For an Order requiring Defendants to pay Plaintiff disability benefits and
24 any other employee benefits she may be entitled to as a result of being found disabled
25 pursuant to the policy or Plan from the date she was first denied these benefits through

1 the date of judgment and prejudgment interest thereon, as well as any other employee
2 benefits she may be entitled to from the Plan and/or Company as a result of being found
3 disabled;

4   B. For an Order finding that Plaintiff meets any definition of disability set forth
5 in the relevant Hartford policy and directing Defendants to continue paying Plaintiff the
6 aforementioned benefits until such time she meets the conditions for termination of benefits;

7   C. For attorney's fees and costs incurred as a result of prosecuting this suit
8 pursuant to 29 U.S.C. §1132(g); and

9   D. For such other and further relief as the Court deems just and proper.

DATED this 2nd day of April, 2012.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
   Scott E. Davis
   Attorney for Plaintiff